

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 28, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL K.,[1]

        Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

        Defendant.

No.  1:24-cv-3195-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Michael K. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits because the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

DISPOSITIVE ORDER - 1

medical records submitted to the Appeals Council following the ALJ's decision establish severe physical impairments that were not considered by the ALJ at step two, and the ALJ erred in her consideration of the medical opinions and Plaintiff's symptom testimony. In contrast, the Commissioner asks the Court to affirm the denial of benefits. Plaintiff establishes error; this matter is remanded for further proceedings.

## I.    Background

On February 28, 2020, Plaintiff applied for benefits, claiming disability beginning May 1, 2012, at the age of 33 years old.[3] After the agency denied benefits, ALJ Cecilia LaCara held telephone hearings in November 2022 and February 2023, at which Plaintiff appeared and

_____

[3] AR 3427–37. Plaintiff was previously awarded disability benefits in 2010, associated with his impairments of major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder with panic attacks and agoraphobia, bipolar disorder, and chronic pain, meeting Listing 12.04. AR 3153. These benefits were terminated in August 2014. AR 2422.

testified without counsel.[4] During the November 2022 hearing, Plaintiff testified that he had been taking his issued prescriptions but had not seen a treating provider for six months.[5] He reported that he had been to jail for driving without an operator's license, had a high school degree, and had previously worked on farm and garden equipment.[6] He stated that he later worked as a service manager for one of the farm-equipment companies, but after seven months, he had to quit that position because he felt that he could not perform the non-exertional requirements of the position.[7]

During the February 2023 hearing, Plaintiff reported that he was single, lived in an apartment by himself, did not have a current driver's license due to unpaid court fines, and his mom takes him if he needs to go to the store or appointments.[8] He testified that he had been to his

---

[4] AR 3106–46.

[5] AR 3112–14.

[6] AR 3117–18, 3120–21.

[7] AR 3119.

[8] AR 3129–31.

medical provider in November 2022 to receive his prescriptions, including fluoxetine, trazodone, and ativan, and he reported that his medications help manage his anxiety symptoms "a little bit" but not his depression symptoms.[9] He stated that he started seeing a counselor and that he believes the medication and counseling work together to help reduce some anxiety symptoms.[10] He testified that he gets anxiety being around other people and while the medications help take the edge off, he does still feel anxious.[11] Plaintiff reported his difficulty with living on the streets and getting into drugs, but that he is now on a suboxone program and had seen one of their counselors online once a week for the past two months.[12] Plaintiff stated that he is depressed, struggles with not wanting to live anymore, and that he does not do much on a typical day.[13]

---

[9] AR 3132–33.

[10] AR 3133.

[11] AR 3133.

[12] AR 3134–36.

[13] AR 3137.

A year later, on February 13, 2024, the ALJ issued a decision denying benefits.[14] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence.[15] The ALJ considered the lay statement from Plaintiff's mother.[16] As to the medical opinions, the ALJ found:

- the opinions of Lisa Kisenwether, ARNP, and the opinions of the state agency psychological consultants (Steven Haney, MD, and Michael Brown, Psych.) persuasive.

---

[14] AR 432–56, 3106–22. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled. If there is medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[15] AR 440–44. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should replace the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[16] AR 447.

- the opinions of the initial state agency medical consultants partially persuasive.

- the opinions of Patrick Metoyer, PhD, and Jenifer Schultz, PhD, somewhat persuasive.

- the opinions of the Troy Bruner, PsyD, and Thomas Genthe, PhD, not persuasive.[17]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2019.

- Step one: Plaintiff had not engaged in substantial gainful activity since May 1, 2012, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar spine disorder, osteoarthritis, anxiety, depression, and post-traumatic stress disorder (PTSD).

---

[17] AR 444–47.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform medium work except:

  > He can stand and/or walk for 90 minutes at a time for up to 8 hours and sit for 2 hours at a time for up to 8 hours. The claimant can occasionally push and/or pull with his right lower extremity. He can engage in frequent climbing ladders, ropes or scaffolds, ramps, or stairs, balancing as well as occasional stooping, crouching, and crawling. His work is limited to occasional superficial interaction with the public and coworkers and occasional changes in the work setting.

- Step four: Plaintiff was not capable of performing past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as final assembler, machine packager, and laundry worker.[18]

---

[18] AR 435–49.

Plaintiff submitted additional medical evidence to the Appeals Council, which denied review.[19] Plaintiff then sought review by this Court.[20]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[21] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

_____

[19] AR 6–12, 399.

[20] ECF No. 1.

[21] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error— one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 8

1   relevant evidence as a reasonable mind might accept as adequate to

2   support a conclusion."[22]

## III.   Analysis

4       Plaintiff argues the Appeals Council erred at step two by not fully

5   considering the later submitted medical records, and the ALJ erred

6   when evaluating the medical opinions and Plaintiff's symptom reports.

7   In response, the Commissioner argues that the Appeals Council

8   appropriately determined the later submitted medical evidence did not

9   affect the ALJ's denial of disability, which was supported by

10  substantial evidence.

———————————————

[22] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 9

## A.    Additional Evidence Submitted to the Appeals Council

After the ALJ issued her denial, Plaintiff obtained additional

medical evidence and submitted it to the Appeals Council. The Appeals

Council decided:[23]

> You submitted medical records dated June 12, 2023 through July 12, 2023 from Tacoma General Hospital (2,842 pages) and medical records dated February 20, 2024 from Lakeview Rheumatology (23 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.
>
> You submitted medical records dated April 29, 2024 through June 4, 2024 from Confluence Health (377 pages). The Administrative Law Judge decided your case through February 13, 2024. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 13, 2024.

Plaintiff argues the Appeals Council incorrectly determined the

medical records submitted to the Appeals Council would not affect the

outcome of the ALJ's denial in February 2024.

The Appeals Council is required to consider new and material

evidence if it "relates to the period on or before the date of the [ALJ's]

hearing decision" and "there is a reasonable probability that the

additional evidence would change the outcome of the decision."[24]

---

[23] AR 7.

[24] 20 C.F.R. § 416.1470(a)(5) & (b).

Evidence that meets the criteria is to be considered by the Appeals Council and incorporated into the administrative record as evidence, "which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."[25] Pursuant to agency policy, a copy of evidence not meeting the criteria and therefore not considered by the Appeals Council is nonetheless included as part of the certified administrative record filed with this Court, although by law, the rejected evidence falls outside the scope of the Court's substantial-evidence review.[26]

As discussed below, the Court finds the later submitted medical records dated June 12, 2023, through July 12, 2023, from Takoma General Hospital, and dated February 20, 2024, from Lakeview

---

[25] *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

[26] See Soc. Sec. Admin. Program Operations Manual System (POMs) HA 01350.020, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/2501350020 (addressing how additional evidence is to be handled).

rheumatology likely would have changed the outcome of the ALJ's decision, particularly at step two. In addition, the Court finds the records dated April 29, 2024, through June 4, 2024, from Confluence Health relate to the period at issue given that they pertain to medical conditions for which Plaintiff was hospitalized in 2023, which was before the ALJ's decision of February 13, 2024. Moreover, as is discussed further below, the later submitted medical records directly undermine the ALJ's step-two findings, which did not consider whether chronic kidney disease and vasculitis were severe impairments during the relevant period. Therefore, remand is necessary for the ALJ to consider the complete record.

**B.    Step Two (Severe Impairments): Plaintiff establishes consequential error.**

The ALJ found Plaintiff had the severe impairments of lumbar spine disorder, osteoarthritis, anxiety, depression, and PTSD, yet the ALJ did not discuss whether Plaintiff also suffered from either chronic kidney disease or vasculitis.[27] Plaintiff agrees that, at the time the ALJ

---

[27] AR 438.

issued her decision, the medical evidence of record was insufficient to support a finding that chronic kidney disease and vasculitis were medically determinable impairments; however, Plaintiff argues that the additional medical evidence provided to the Appeals Council establishes these impairments during the period in question, necessitating remand. In response, the Commissioner argues that the ALJ—and later the Appeals Council—appropriately did not discuss whether these conditions were severe impairments because there was very little evidence regarding these impairments, which were either not conclusively diagnosed nor lasted for longer than 12 months.

1.    Step-two standard

At step two, the ALJ determines whether the claimant suffers from a severe impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[28] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment, and 2) if so, determining whether the

---

[28] 20 C.F.R. §§ 404.1520(c), 416.920(c).

1  impairment is severe.[29] To be severe, the medical evidence must

2  establish that the impairment would have more than a minimal effect

3  on the claimant's ability to work.[30]

4      Neither a claimant's statement of symptoms, nor a diagnosis, nor

5  a medical opinion sufficiently establishes the existence of an

6  impairment.[31] Rather, "a physical or mental impairment must be

7  established by objective medical evidence from an acceptable medical

8  source."[32] If the objective medical signs demonstrate the claimant has a

9

10

11
_____

12  [29] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

13  [30] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see* Soc. Sec. Rlg. (SSR) 85-

14  28 (Titles II and XVI: Medical Impairments That Are Not Severe).

15  [31] *Id.* §§ 404.1521, 416.921.

16  [32] *Id.* §§ 404.1521, 416.921. *See also* SSR 85-28 at *4 ("At the second

17  step of sequential evaluation . . . medical evidence alone is evaluated in

18  order to assess the effects of the impairment(s) on ability to do basic

19  work activities.").

DISPOSITIVE ORDER - 14

1  medically determinable impairment,[33] the ALJ must then determine

2  whether that impairment is severe.[34]

3  The severity determination is discussed in terms of what is *not*

4  severe.[35] A medically determinable impairment is not severe if the

5  "medical evidence establishes only a slight abnormality or a

6  combination of slight abnormalities which would have no more than a

7  minimal effect on an individual's ability to work."[36] Because step two is

8  simply to screen out weak claims,[37] "[g]reat care should be exercised in

9  applying the not severe impairment concept."[38] Step two "is not meant

10  to identify the impairments that should be taken into account when

_____

12  [33] "Signs means one or more anatomical, physiological, or psychological

13  abnormalities that can be observed, apart from [a claimant's]

14  statements (symptoms)." *Id.* §§ 404.1502(g), 416.902(l).

15  [34] *See* SSR 85-28 at *3.

16  [35] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

17  [36] *Id.*; *see* SSR 85-28 at *3.

18  [37] *Smolen*, 80 F.3d at 1290.

19  [38] SSR 85-28 at *4.

determining the RFC" as step two is meant *only* to screen out weak claims, whereas the crafted RFC must take into account all impairments, both severe and non-severe.[39]

2.  <u>Analysis</u>

First, contrary to the Commissioner's position that the additional medical records contained insufficient evidence that chronic kidney disease was a medically determinable impairment, the medical records establish that chronic kidney disease (CKD) was diagnosed. Although treating providers were trying to assess whether Plaintiff's significant kidney challenges during his hospitalization in June and July 2023 were due to an acute kidney injury or chronic kidney disease, the subsequent medical records reflect that medical providers did diagnose Plaintiff with chronic kidney disease. For instance, the Brief Patient Summary from a June 15, 2023 treatment record states:

> [Plaintiff] is a 44 year old male with [past medical history] including [chronic kidney disease 4], polysubstance abuse, chronic back pain, admitted 6/12/12 with 3 weeks of persistent and progressive pain in the low back with radicular b/l leg pain & abdominal pain, found to have

---

[39] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[acute kidney injury] on CKD4 vs progression of CKD and evidence of oral thrush.

A nephrology progress note from July 3, 2023, stated that Plaintiff had "chronic kidney disease stage 4" and that the "underlying cause for kidney disease is not clear."[40]  A week later, a medical note mentioned that there was a concern for antineutrophilic cytoplasmic antibody (ANCA) vasculitis.[41] Dialysis began days later and continued through October 2023.[42] The medical records during this time reflect that Plaintiff had edema in his lower extremities and hands, had a left foot drop with decreased clearance, and generalized weakness.[43]

Plaintiff was hospitalized again in October 2023 for atypical bibasilar pneumonia; nephrology was consulted.[44] His physicians later

---

[40] AR 712.

[41] AR 794.

[42] AR 743–44, 3812–21.

[43] AR 616, 2223–24, 833–38, 722–24,  780–82, 889–91, 1962.

[44] AR 161, 3834.

questioned whether he had symptomatic vasculitis at that time.[45] In February 2024, Plaintiff was seen by a rheumatologist for possible ANCA-associated vasculitis, noting "problematic" numbness in his hands, which had improved on the higher dose of prednisone.[46] He exhibited some features of ANCA vasculitis, including peripheral sensory neuropathies and foot drop, but lacked other classic features, leaving the rheumatologist a "bit perplexed."[47] He was referred to physiatry for imaging, an ANCA panel, and other bloodwork.[48]

In April 2024, Plaintiff was again admitted to the hospital, experiencing weakness, swelling of his left arm and left foot, rash on his left forearm and elbow, and back pain.[49] He was admitted, and the medical records reflect that Plaintiff had been diagnosed with chronic

---

[45] AR 161.

[46] AR 400.

[47] AR 401.

[48] AR 402.

[49] AR 138.

kidney disease and a "history of ANCA vasculitis."[50] Imaging revealed a hemorrhage in the posterior aspect of the inferior pole left kidney, which extended posterior to the left kidney into the retroperitoneum adjacent to the left psoas muscle.[51] In May 2024, he had follow-up treatment for ANCA vasculitis.[52] During a follow-up session, the treating provider noted that Plaintiff "has a diagnosis of suspected ANCA vasculitis – manifestations are not entirely clear and it is also not clear if he has renal involvement."[53] Plaintiff was observed with a mild left foot drop, but with normal gait, and mild thenar atrophy.[54]

Thus, while the additional medical records have varying information about the presence of ANCA vasculitis, the medical records clearly identify that Plaintiff suffered from chronic kidney disease, and that in the summer of 2023, it was stage 4 (severe kidney damage).

---

[50] AR 144.

[51] AR 174.

[52] AR 103.

[53] AR 60.

[54] AR 57–58.

One treatment record preceding Plaintiff's hospital stay during the summer of 2023 was from February 2022 for medication management during which Plaintiff was observed with edema in the bilateral lower extremities.[55] By failing to consider Plaintiff's kidney disease as an impairment, there was no discussion as to whether the edema observed in February 2022 was related to his chronic kidney disease.[56] This error was not harmless, particularly as to the period after February 2022, given that the RFC allowed for medium work.

Moreover, Plaintiff clearly suffered from another impairment, which was suspected to be vasculitis, requiring hospitalization in October 2023 and April 2024. On remand, the ALJ is to develop the medical record as necessary to determine whether vasculitis—or another impairment—has been confirmed as the cause for these signs and symptoms.

---

[55] AR 3770–76.

[56] A January 2019 CT scan of Plaintiff's kidneys was unremarkable. AR 3600, 3660.

1    **C.    Mental-Health Opinions: Plaintiff establishes**

2         **consequential error.**

3         Plaintiff argues the ALJ erred when evaluating the mental-

4    health opinions of Dr. Genthe, Dr. Schultz, and Dr. Metoyer. In

5    response, the Commissioner argues that the ALJ's evaluation of the

6    mental-health opinions was supported by substantial evidence—and

7    any error was harmless because the ALJ reasonably found the

8    reviewing state agency administrative opinions more supported by and

9    consistent with the record. As is explained below, the ALJ erred by not

10   considering the consistency between each of these challenged opinions

11   and by giving undue weight to "benign" mental-health findings and

12   Plaintiff's lack of continued mental-health treatment.

13        1.    Standard

14        The ALJ must consider and articulate how persuasive she found

15   each medical opinion and prior administrative medical finding,

16   including whether the medical opinion or finding was consistent with

17

18

19

and supported by the record.[57] The factors for evaluating the

persuasiveness of medical opinions include, but are not limited to,

supportability, consistency, relationship with the claimant, and

specialization.[58] Supportability and consistency are the most important

factors,[59] and the regulations define these two required factors as

follows:

> (1) Supportability. The more relevant the objective medical
> evidence and supporting explanations presented by a
> medical source are to support his or her medical opinion(s)
> or prior administrative medical finding(s), the more
> persuasive the medical opinions or prior administrative
> medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or
> prior administrative medical finding(s) is with the evidence
> from other medical sources and nonmedical sources in the
> claim, the more persuasive the medical opinion(s) or prior
> administrative medical finding(s) will be.[60]

---

[57] 20 C.F.R. §§ 404.1520c, 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th

785, 792 (9th Cir. 2022).

[58] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(5).

[59] 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

[60] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(2).

1    The ALJ may, but is not required to, explain how the other listed

2    factors were considered.[61] When considering the ALJ's findings, the

3    Court is constrained to the reasons and supporting explanation offered

4    by the ALJ.[62]

5        2.    Dr. Genthe

6        In July 2021, Dr. Genthe performed a psychological evaluation of

7    Plaintiff, during which Plaintiff provided an excessive amount of detail,

8    his mood was tired, he was tangential and circumstantial, he had

9    moderate difficulties following the conversation, and he had poor

10    understanding about the factors contributing to his illness.[63]

---

12    [61] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical

13    opinions or prior administrative findings "about the same issue are

14    both equally well-supported . . . and consistent with the record . . . but

15    are not exactly the same," the ALJ is required to explain how "the

16    other most persuasive factors in paragraphs (c)(3) through (c)(5)" were

17    considered. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

18    [62] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

19    [63] AR 3603–10.

1   Dr. Genthe diagnosed Plaintiff with panic disorder, PTSD, and bipolar

2   I (current depressive episode) and opined that Plaintiff's "ability to

3   interact with co-workers and the public is likely moderately impaired

4   due to anxiety, PTSD, and mood symptoms and tendency to avoid

5   others"; "his ability to maintain regular attendance in the work place is

6   moderately to markedly impaired"; his "ability to understand,

7   remember, and carry out complex instructions is mild to moderately

8   impaired"; "his ability to complete a normal work day or work week

9   without interruption from anxiety, PTSD, and mood symptoms is likely

10  moderately impaired"; and "his ability to deal with the usual stress

11  encountered in the work place is moderately impaired if it involves

12  persistent activity interacting with other individuals.[64]

13      The ALJ did not find Dr. Genthe's opinions persuasive because 1)

14  they are inconsistent with Plaintiff's lack of continuous mental health

15  treatment and largely benign mental status evaluations during the

16  period, 2) he did not provide a narrative statement to explain how he

17  reached his conclusions or cite any supporting evidence, and 3) they

18  _____

19  [64] AR 3633.

conflict with the reviewing state agency psychological consultants' opinions, who reviewed the longitudinal record.[65]

On this record, the ALJ's analysis contains error. First, the ALJ is not to discount a claimant's reported mental health symptoms—nor an examining doctor's opinions about resulting limitations—based on the claimant's failure to engage in continuous mental health treatment if such lack of continuous treatment may be attributable to the underlying mental health condition or other good cause, such as homelessness.[66] The ALJ failed to assess such here, even though Plaintiff discussed challenges with homelessness, Dr. Genthe found that Plaintiff's level of understanding about the factors contributing to his illness was poor, and Dr. Metoyer recommended the assistance of a

---

[65] AR 447.

[66] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–1300 (9th Cir. 1999); SSR 18-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

payee, thereby indicating a concern about Plaintiff's reasoning and judgment.[67]

Second, the ALJ's finding that Plaintiff had largely benign mental status evaluations during the period was made without the medical records from Plaintiff's hospitalizations in 2023 and 2024.[68] While hospitalized, Plaintiff became highly distracted, required heavy encouragement, screamed, and was tangential, very anxious, verbally

––––––––––––––––––

[67] *See* AR 3609, 3633; AR 3770–72 (noting that Plaintiff was not currently interested in counseling even though he is feeling down and depressed and that he was recently homeless with a racing mind and difficulty sleeping); AR 3629 (reporting unstable housing for the past five years).

[68] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding).

abusive to staff, and very frustrated.[69] In addition, the ALJ did not mention that Plaintiff had somewhat agitated body movement and a restricted affect during his psychological evaluations with Dr. Schultz and was observed with a mood congruent with his stated "anxious, down, and depressed mood" during his psychological evaluation with Dr. Metoyer.[70]

Third, the ALJ's decision finding that Dr. Genthe did not support his opinion with either a narrative statement or supporting evidence is not supported by substantial evidence. Dr. Genthe explained he based his findings on his "behavioral observations made, information gained during the clinical interview, and PAI profile scores."[71] As noted above, Dr. Genthe noted that the amount of detail that Plaintiff provided in

---

[69] AR 869–70, 873, 889, 894, 1928, 57.

[70] AR 3615–19, 3629–34.

[71] AR 3607. *See also Buck*, 869 F.3d at 1049 (Psychologist's opinion was based on a clinical interview and mental status evaluation and partially relied on the claimant's self-reports; partial reliance on self-reported symptoms was not a valid reason to reject the opinion.).

response to questions was excessive and he was delayed in reaching a point.[72] Dr. Genthe also found that Plaintiff's insight and judgment were poor to fair.[73] During the interview, Plaintiff reported that he isolated, had no motivation, that he feels depressed, was molested as a child, is cautious around older people, he had a panic attack in November 2019, he has poor follow through, has a history of acting without thinking first, and procrastinates.[74] Moreover, the ALJ fails to explain why Dr. Genthe's observations and supporting statements were less detailed than the reviewing opinions authored by Steven Haney, MD, and Michael Brown, Psych., which the ALJ found persuasive because they "provided a detailed assessment of the claimant's condition, compete [sic] with references to the medical evidence."[75] Yet, the supporting explanation and evidence cited by Dr. Haney and

---

[72] AR 3608.

[73] AR 3609.

[74] AR 3604–06.

[75] AR 445.

Dr. Brown are no more "detailed" than Dr. Genthe's supporting explanation and evidence cited.[76]

Finally, the ALJ failed to meaningfully compare the consistency between all the mental-health opinions when discounting Dr. Genthe's opinions.[77] The ALJ merely contrasted Dr. Genthe's opinions against Dr. Haney's and Dr. Brown's reviewing state agency opinions, without considering the consistencies between Dr. Genthe's opinions and Dr. Schultz's and Dr. Metoyer's opinions, which are discussed in more detail below. Plus, although the ALJ found Dr. Haney's and Dr. Brown's reviewing opinions supported by their "complete access to the medical evidence available at the time of their decisions," the ALJ did not discuss that Dr. Schultz had reviewed Dr. Bruner's evaluation

---

[76] *Embrey*, 849 F.2d at 421-22; *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[77] 20 C.F.R. §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c). *See Buck*, 869 F.3d at 1050; *Lingenfelter*, 504 F.3d at 1042.

and Dr. Metoyer had reviewed both Dr. Bruner's and Dr. Schultz's evaluations. Likewise, it does not appear that the ALJ discussed that Luci Carstens, PhD, PS, had reviewed Dr. Genthe's opinion, and while she reduced some of the limitations from marked to significant, she agreed that Plaintiff's mental-health issues impacted his functioning and found that he had been impaired for at least twelve months.[78]

In summary, the ALJ failed to provide valid reasons supported by substantial evidence for finding Dr. Genthe's opinions not persuasive.

3.    Dr. Schultz

In September 2020, Dr. Schultz performed a psychological evaluation, including a clinical interview and a mental-status examination.[79] She reviewed a psychological evaluation conducted by Dr. Bruner in April 2018, which found that Plaintiff's non-exertional abilities were unimpaired.[80] Dr. Schultz's mental-status observations were normal, except that Plaintiff's body movements were somewhat

---

[78] AR 3644–45.

[79] AR 3615–19.

[80] AR 3616, 3581–88.

agitated, his stated "little anxious" mood was congruent with his restricted affect, he was able to report two of three objects after a short delay, and he was unable to spell "world" correctly backwards. She opined that Plaintiff's ability to finish tasks in a timely matter was challenged and his social, occupational, and daily living skill adaptation was poor.[81]

The ALJ found "only somewhat persuasive" Dr. Schultz's opinions because 1) "'poor' is not a vocationally relevant term that indicates how often the claimant can engage in the specified activities," and 2) "the largely benign findings documented in most of the mental status evaluations in the record or the claimant's lack of consistent mental health treatment during the period in question" did not support Dr. Schultz's marked limitations.[82]

Again, the ALJ erred by using Plaintiff's lack of consistent mental health treatment as a basis to find Dr. Schultz's opinions unsupported without examining whether Plaintiff's impairments or another good

---

[81] AR 3618.

[82] AR 446.

cause contributed to his lack of consistent mental-health treatment. In addition, the ALJ's reliance on "benign" mental-status findings must be re-evaluated considering the observations during Dr. Genthe's, Dr. Schultz's, and Dr. Metoyer's evaluations and the later supplied medical records. Finally, Dr. Schultz's opinion that Plaintiff has "poor" social, occupational, and daily living skill adaptation must be considered along with Dr. Genthe's and Dr. Metoyer's observations and opinions when evaluating the required consistency factor.

4.  Dr. Metoyer

In July 2021, Dr. Metoyer performed a psychological evaluation, including interviewing Plaintiff and a mental-status examination.[83] Dr. Metoyer reviewed Dr. Schultz's evaluation and Dr. Bruner's evaluation.[84] Dr. Metoyer noted normal mental-health observations, along with an affect that was congruent with his stated mood of "anxious, down, depressed" and that Plaintiff was able to recall two of the past three presidents, identify two out of three objects, and

---

[83] AR 3629–34.

[84] AR 3629–34, 3581–88, 3615–19.

complete three out of five digits in the reverse. Dr. Metoyer opined that Plaintiff's mental health progress was guarded, that he appeared to require the assistance of a payee, and that he had the following limitations:

- ability to interact with others was "likely moderately impaired due to anxiety, PTSD, and mood symptoms and tendency to avoid others."

- "ability to maintain regular attendance in the work place is moderately to markedly impaired."

- "ability to understand, remember, and carry out complex instructions is mild to moderately impaired."

- "ability to complete a normal work day or work week without interruption from anxiety, PTSD, and mood symptoms is likely moderately impaired."

- "ability to deal with the usual stress encountered in the work place is moderately impaired if it involves persistent activity interacting with other individuals."[85]

---

[85] AR 3633.

As to Dr. Metoyer's evaluation, the ALJ wrote:

> His conclusions are supported by his diagnostic findings, which noted that the claimant had a depressed or anxious mood as well as some difficulties with his memory and recall. These limitations are consistent with similarly noted difficulties in the claimant's other consultative psychological exactions. However, his finding that the claimant has no more than moderate limitations in any one area is supported by the claimant's overall lack of consistent mental health treatment. His conclusions are also consistent with those of the state agency psychological consultants on reconsideration, who reviewed the available medical evidence and came to a similar conclusion regarding the claimant's mantle [sic] abilities. However, "mild" and "moderate" do not describe in vocationally relevant terms how often the claimant can engage in the specified activities, making Dr. Metoyer's opinion overly broad, general, and of limited use in deterring the claimant's mental residual functional capacity. The undersigned therefore incorporated his opinion into the above limitations in as much as they were consistent with the other evidence of record.[86]

Plaintiff accurately highlights that the ALJ erred by stating that Dr. Metoyer opined that Plaintiff had "no more than moderate limitations in any one area."[87] Instead, Dr. Metoyer opined that Plaintiff's ability to "maintain regular attendance in the work place is

---

[86] AR 446.

[87] ECF No. 8 at 17 (quoting AR 446).

moderately to markedly impaired."[88] The Commissioner argues that the ALJ's characterization of Dr. Metoyer's opinion is at most harmless because the ALJ otherwise found the prior administrative medical findings, which found no more than moderate limitations, persuasive. However, the ALJ's overall assessment of the consistency between the medical opinions is impacted by the erroneous finding that Dr. Metoyer had opined only moderate limitations, rather than up to a marked impairment in the ability to maintain regular attendance, which is more consistent with Dr. Schultz's opinion that Plaintiff's occupational adaption was poor, and Dr. Genthe's opinion that Plaintiff had a marked limitation in being able to complete a normal workweek, than with the opinions of Dr. Haney or Dr. Brown. Therefore, this error is consequential.

Moreover, the ALJ again erred by giving undue weight to Plaintiff's "overall lack of consistent mental health treatment" without considering whether such is due to his mental-health impairments or other good cause.

---

[88] AR 446.

1

**D.    Remand: further proceedings**

2

Because of the ALJ's errors when evaluating the medical opinions

3

and the need for the ALJ to consider whether there are additional

4

severe impairments, remand for a new disability evaluation is needed,

5

and the Court need not analyze Plaintiff's additional arguments in

6

support of remand.[89]

7

On remand, this matter is to be **reassigned to a new ALJ, who**

8

**is to issue a decision within 120 days of this Order**.[90] When

9

considering the later submitted medical evidence, along with any other

10

newly provided medical evidence, the ALJ is to assess whether

11

_____

12

[89] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (specifying

13

that remand for additional proceedings is usual recourse).

14

[90] If the ALJ finds Plaintiff not disabled and Plaintiff appeals, the

15

Commissioner's final decision shall be rendered within 60 days of the

16

appeal. *See Butts v. Barnhart*, 416 F.3d 101, 103–06 (2d Cir. 2005)

17

imposing a 120-day limit for proceedings before the ALJ and a 60-day

18

limit for administrative appeal); *see also* POMS HA 01210.055

19

(articulating agency procedures following a time-limited court remand).

1  separate RFCs (or listings findings, such as Listing 6.03) are needed for

2  varying portions of the relevant period.[91] In addition, the ALJ is to

3  evaluate the reviewing opinion of Luci Carstens, PhD, PS, who

4  reviewed Dr. Genthe's opinions, which does not appear to have been

5  part of the ALJ's prior evaluation.[92] Moreover, the Court highlights

6  that a finding of "persuasiveness" as to ARNP Kisenwether's opinion,

7  which limited Plaintiff to 4 hours of sitting and 4 hours of standing,

8  appears at odds with the modified medium-work RFC crafted by the

9  ALJ, which allowed up to 8 hours of both sitting or standing with 90

10  minute/120 minute intervals.[93]

11      Finally, if the ALJ again discounts Plaintiff's symptoms, the ALJ

12  must articulate clear and convincing reasons for discounting Plaintiff's

13

14  _____

15  [91] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021).

16  [92] AR 3644.

17  [93] AR 3624–25. Instead of finding ARNP Kisenwether's opinions

18  "persuasive," it appears the ALJ found her opinions only somewhat

19  persuasive.

1 symptoms, including identifying what symptoms are being discounted

2 and the evidence supporting the ALJ's findings.[94]

### IV.   Conclusion

4       Plaintiff establishes the ALJ erred. The ALJ is to develop the

5 record and reevaluate—with meaningful articulation and evidentiary

6 support—the sequential process.

7       Accordingly, **IT IS HEREBY ORDERED**:

8   1.   The ALJ's nondisability decision is **REVERSED, and this**

9        **matter is REMANDED to the Commissioner of Social**

10       **Security for further proceedings pursuant to**

11       **sentence four of 42 U.S.C. § 405(g) before a new ALJ,**

12       **who is to issue a decision within 120 days of this**

13       **Order**.

14 ///

15 ///

16 //

17 /

18 _____

19 [94] *Lingenfelter*, 504 F.3d at 1036.

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 13**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 28th day of May 2025.

_____
EDWARD F. SHEA
Senior United States District Judge